# PELTON GRAHAM LLC

111 BROADWAY, SUITE 1503, NEW YORK, NEW YORK 10006
T 212.385.9700 ‖ F 212.385.0800 ‖ WWW.PELTONGRAHAM.COM

**BRENT E. PELTON, ESQ.**                                                                          AUGUST 24, 2017
PELTON@PELTONGRAHAM.COM

<u>**VIA ECF**</u>

Honorable Ramon E. Reyes, Jr.
United States Courthouse
225 Cadman Plaza East, Rm. N208
Brooklyn, New York 11201

      Re:    *Daniel v. Prospect Hall Caterers, Inc. et al.*
              <u>Civil Action No. 17 Civ. 00139 (JBW)(RER)</u>

      We represent plaintiff Esther Daniel ("Daniel" or "Plaintiff") in the above-referenced matter. This letter is submitted jointly with counsel for Defendants pursuant to the Fair Labor Standards Act (FLSA), the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Counsel for the parties respectfully submit that the attached negotiated Settlement Agreement (Exhibit A) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

**I.**      **Introduction**

      Plaintiff commenced this action by filing a Collective and Class Action Complaint (Dkt. No. 1, the "Complaint") on behalf of herself and similarly situated employees of Defendants on January 10, 2017 seeking unpaid overtime wage pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* and the New York Labor Law ("NYLL") § 650 *et seq.*, as well as damages for spread-of-hours, wage notice and wage statement violations pursuant to the NYLL. Plaintiff worked as a cook for Defendants at their catering hall.

      The parties filed a case management statement with Your Honor on March 14, 2017 (Dkt. 14) and attended an initial conference with Your Honor on March 16, 2017. At the initial conference, the parties discussed their desire to discuss settlement, therefore, Your Honor held that the Case Management Statement would be held in abeyance while the parties negotiated settlement. Over the next five (5) months, Defendants exchanged substantial document discovery with Plaintiff, and Plaintiff calculated a damages analysis. The parties engaged in much back and forth and arrived at a settlement in principle, and finally reduced the agreement to writing in the settlement agreement which is annexed hereto.

**II.     The Settlement Accounts for Litigation Risk and Compensates Plaintiff for Substantial Damages**

Throughout this litigation, the parties have had certain major points of contention. Most importantly, the parties did not agree on the number of hours actually worked by Plaintiff. While Plaintiff alleges that she typically worked from in or around December 2008 through in or around December of 2016, forty-two to sixty (42-60) hours per week, Defendants claim that Plaintiff did not work several weeks during this time period, and did not work as many overtime hours as alleged.

Defendants produced time cards and pay records during the litigation. While Plaintiff believes several weeks of records are missing, Plaintiff acknowledges that she does not have documentary evidence to prove this. It is Defendants' position that they produced all time cards and pay records, and to the extent that there were weeks missing it was because Plaintiff did not work those weeks. Due to the fact-intensive nature of this issue, it is likely that substantive answers would not be resolved until after significant additional discovery and motion practice, if not a trial. Based on these disputes, the parties engaged in good-faith, arm's-length settlement negotiations.

Plaintiff created a damages analysis based on the Defendants' records as well as an average of hours worked where Defendants were missing time card data. The analysis calculates a total estimated unpaid overtime wage damages at $3,207.75, total estimated unpaid spread-of-hours damages at $2,336.00 for total unpaid wage damages of $5,543.75. When adding wage notice damages at $5,000, wage statement damages at $5,000, damages for liquidated damages at $5,543.75 and interest at $1,641.71, the total damages amount rises to $22,729.21. Defendants heavily dispute the dates of employment alleged by Plaintiff and hours worked. In addition to Plaintiff's wage damages, Plaintiff's counsel incurred approximately $13,464.00 in attorneys' fees and $635.52 in litigation costs, which brings the grand total in damages above $36,000. The settlement amount (i.e. $22,500) represents full recovery of Plaintiff's unpaid wages calculated from the Plaintiff's analysis, plus nearly full damages for her statutory claims, liquidated damages and interest. The settlement represents a substantial portion of Plaintiff's alleged damages, which would be the anticipated recovery if Plaintiff had received a favorable outcome at trial under both federal and state law. While it does not compensate Plaintiff for her attorneys' fees in addition to the damages, the parties believe this is a fair recovery based on the risks associated with establishing the calculated damages.

**III.    Settlement Terms**

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $22,500.00 (the "Settlement Amount"). Of that amount, $7,923.68 is payable to Plaintiff's counsel, representing $635.52 in expenses for counsel's costs for filing and service of the complaint, plus one-third (33.33%) of the Settlement Amount, after subtracting those expenses (i.e. $635.52). The remaining $14,576.32 is payable directly to Plaintiff (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a release of wage and hour claims which could have been raised in the instant lawsuit. The parties

also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the instant litigation.

The Second Circuit in *Cheeks* questioned the propriety of an FLSA settlement agreement in another case that included: (1) "a battery of highly restrictive confidentiality provisions" (2) an overbroad release that would waive both current and future claims and (3) a fee for plaintiffs' attorneys of "between 40 and 43.6 . . . without adequate documentation to support such a fee award." The Settlement Agreement before Your Honor, however, (1) does not contain a restrictive confidentiality provision; (2) does not contain a release which is one-sided or is to be applied to future claims and (3) the Plaintiff's attorneys' fees are standard. Most importantly, and unlike the settlement agreement at issue in *Cheeks,* the Settlement Agreement is available to Your Honor to explore and to assess whether it was likely the "fair result of a balanced negotiation, in which Plaintiff was represented by able counsel."[1]

## IV.    Plaintiff's Attorney's Fees and Expenses

As set forth in the attached Declaration of Brent E. Pelton, Esq. (Exhibit B), as of August 10, 2017 Plaintiff's counsel had spent more than thirty-six (36) hours in prosecuting and settling this matter, resulting in a lodestar of $13,464.00. Plaintiff's counsel had spent $635.52 in actual litigation costs. The portion of the settlement amount that plaintiffs seek as attorney's fees (i.e. $7,288.16) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, which is much less than the lodestar amount and is consistent with what was agreed upon between Plaintiff and his counsel in his retainer agreement and the consent to become party plaintiff form filed with the Court. The retainer agreement between Plaintiff and her counsel set forth a contingency fee of one-third (1/3) of any settlement, plus reimbursement of actual litigation costs.

The hourly billing rates utilized by Plaintiff's counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Eastern District of New York. In fact, the same rates have been approved in connection with a recent wage and hour settlement in the Eastern District. *See Hall v. Prosource Techs., LLC*, 14-cv-2502(SIL), 2016 U.S. Dist. LEXIS 53791 at *38-41 (E.D.N.Y. April 11, 2016). Accordingly, Plaintiff's counsel submits that the attorney's fees component of the settlement is fair and reasonable.

## V.    The Court Should Find That the Settlement Is Fair and Reasonable

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012).[2] Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013).

---

[1] *Lola v. Skadden,* No. 13-cv-5008 (RJS), 2016 U.S. Dist. LEXIS 12871, at *4 (S.D.N.Y. Feb. 3, 2016).
[2] The parties note that *Cheeks* relies heavily on the Eleventh Circuit's decision in *Lynn's Food Stores, Inc. v. United States Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982), and that the Eleventh Circuit itself has subsequently contemplated that the supervision doctrine laid out in that case may apply only where a "compromise" of an FLSA claim has occurred. *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009).

Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, there is no question that the settlement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations over several months. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. As explained above, the settlement represents a full recovery of alleged unpaid wages and a significant amount of statutory, interest and liquidated damages for the Plaintiff's claims. Settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation. Defendants asserted legitimate substantive defenses which highlighted substantial risk to Plaintiff's ability to continue this FLSA litigation. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) (FLSA protects only minimum wage and overtime). Arm's-length negotiations between knowledgeable counsel followed, culminating in a negotiated resolution.

* * * * *

As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. The parties believe that the settlement is completely fair, reasonable, and adequate to the Plaintiff and respectfully request that the Court approve the Agreement.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the parties should you have any questions regarding this submission.

> Respectfully submitted,
>
> */s/ Brent E. Pelton*
>
> Brent E. Pelton, Esq. of
> PELTON GRAHAM LLC

cc:   All counsel (via ECF)